-IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN L. REEDER, *et al.*,          *

      Plaintiffs,          *

          v.          *          Civil Action No.: RDB 05-1272

NATIONWIDE MUTUAL FIRE          *
INSURANCE COMPANY, *et al.*,
                              *

      Defendants.          *

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Pending before this Court are Defendants' Motions to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and Defendants' Motions to Quash Plaintiffs' Demand for a Jury Trial. This Court has jurisdiction under 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendants' Motions to Dismiss Complaint are GRANTED with respect to Count II of the Complaint and DENIED as to the remaining counts, and Defendants' Motions to Quash Plaintiffs' Demand for a Jury Trial are GRANTED with respect to Counts I and III and DENIED as to the remaining counts.

## BACKGROUND

As alleged in the complaint, several days before tropical storm Isabel hit the State of Maryland on September 17, 2003, Plaintiffs Kevin L. Reeder and Tammi L. Reeder (the "Reeders") decided to purchase homeowner's and flood insurance. The Reeders contacted Defendant John E. Gallup, Jr. Insurance ("Gallup"), who sent Ms. Karen Toohey to the Reeders' home to evaluate their property and discuss purchasing an insurance policy. After responding to

specific requests made by the Reeders, Ms. Toohey represented that their swimming pool and "the entirety of the contents in their home would be covered along with any contents they placed in a wooden shed on the premises."  (Compl. ¶¶ 11-13.)

On September 15, 2003, the insurance policy issued by Defendant Nationwide Mutual Fire Insurance Company ("Nationwide") and purchased by the Reeders became effective. (Compl. ¶ 14.)  The Reeders received a "Declarations Page" that described the "Property" as "Three or More Floors with No Enclosure.  A Single Family Residence, Elevated Building." and also described the "Contents" as "Household Contents Located on First Floor and Above."  (*Id.* at ¶¶ 14-16.)  Based on Ms. Toohey's representations and the Declarations Page, the Reeders believed that their swimming pool and all contents in their home and shed would be covered. (*Id.* at ¶ 17.)  The Reeders did not receive a copy of the actual policy until tropical storm Isabel had passed.  (*Id.*)  Although not mentioned in the complaint, the flood insurance policy that the Reeders eventually received provides that "[t]his policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, . . . and Federal common law."  *See* 44 C.F.R. Pt. 61, App. A, Art. IX.

On September 17, 2003, tropical storm Isabel caused significant damages to the Reeders' property.  The Reeders estimated their losses at $150,000 and promptly submitted an inventory of damages to Defendants.  An adjuster from Nationwide, however, determined that the Reeders suffered only $865.52 in damages.  (Compl. ¶ 21.)  The Reeders objected and Nationwide sent another adjuster to the Reeders' property.  This second adjuster determined that the Reeders' damages amounted to $11,594.17.  (*Id.* at ¶ 23.)  The Reeders contacted Nationwide to inquire about the discrepancy between their estimated losses and the estimate provided by the second

adjuster.  Nationwide informed the Reeders that their pool, property on the first floor of their

home, their shed, and property in their shed would not be covered.  (*Id*. at ¶¶24-25 & 45-51.)

Plaintiffs initially filed their complaint in the Circuit Court for Baltimore County,

Maryland.[1]  Plaintiffs' complaint alleges a variety of breach of contract and state law tort claims

against Defendants John E. Gallup Jr. Insurance and Nationwide Mutual Fire Insurance

Company.[2]  On May 10, 2005, Defendants filed a Joint Notice of Removal.  On May 12, 2005,

Nationwide filed its Motion to Quash Plaintiffs' Demand for a Jury Trial.  On May 16, 2005,

Nationwide filed its Motion to Dismiss Plaintiffs' Complaint, and Gallup adopted Nationwide's

motions in all respects.

<u>STANDARD OF REVIEW</u>

Defendants seek to dismiss Plaintiffs' action pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure and contend that Plaintiffs' complaint fails to state a claim upon which

relief can be granted.  As the legal sufficiency of the complaint is challenged under a Rule

12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the

existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern*

*Shore Mkts. v. J.D. Assocs. Ltd*. *P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King*

*& Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be

granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it

---

[1]    The record does not clearly reflect the date on which the Plaintiffs filed their complaint in the Circuit Court for Baltimore County.  (*See* Compl. (neither stamped nor dated by the Circuit Court for Baltimore County); Notice of Removal ¶ 2 (stating that Nationwide and Gallup received notice of Plaintiffs' complaint in April 2005).)

[2]    Plaintiffs' complaint mistakenly identifies Defendant Nationwide Mutual Fire Insurance Company  as "Nationwide Flood Insurance Program."  (*See* Compl.; Notice of Removal p. 1 n.1.)

appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

## DISCUSSION

### I.      National Flood Insurance Program.

The National Flood Insurance Program ("NFIP") was established to make flood insurance available on reasonable terms and conditions and reduce fiscal pressure on federal

4

flood relief efforts.  *See* 42 U.S.C. § 4001.  The NFIP is administered by the Director of the

Federal Emergency Management Agency ("FEMA") under the National Flood Insurance Act of

1968, 42 U.S.C. §§ 4001-4129 ("NFIA").  The NFIP is funded through the National Flood

Insurance Fund, which was established by FEMA in the United States Treasury.

      As the United States Court of Appeals for the Fourth Circuit has explained:

> When Congress created the NFIP it gave the program's administrator
> two ways to execute the program and discretion to choose between
> them.  The first method, the "Industry Program," allows a pool of
> private insurers to underwrite flood insurance with financial backing
> from the government.  The "Government Program," the second
> option, allows the government to run the NFIP itself—offering
> federally underwritten policies—with the potential for administrative
> assistance from private insurers.  In 1977[,] the Secretary of Housing
> and Urban Development, who ran the NFIP at the time (it has since
> been taken over by the Federal Emergency Management Agency),
> decided that the Industry Program was unworkable and ended it.  He
> then implemented the Government Program, which has continued to
> the present.

*Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 598-99 (4th Cir. 2002) (quoting *Downey v. State*

*Farm Fire & Cas. Co.*, 266 F.3d 675, 678-79 (7th Cir. 2001) (internal citations omitted)).

      In 1983, the Director of FEMA created the Write-Your-Own Program ("WYO Program")

under the Government Program.  The WYO Program allows private insurance companies to

issue flood insurance polices in their own name.  44 C.F.R. §§ 61.13 & 62.23.  Participating

insurance companies are known as "WYO Companies."  *Id.*  Flood insurance polices issued by

WYO Companies must contain the exact terms and conditions of the Standard Flood Insurance

Policy ("SFIP") found in 44 C.F.R. Pt. 61, App. A.  44 C.F.R. §§ 61.4(b), 61.3, 61.13(d), (e),

62.23(c).  Those terms and conditions cannot be varied by the WYO Company without the

express written consent of the Federal Insurance Administrator.  44 C.F.R. §§ 61.4(b), 61.13(d)

& (e), 62.23(c) & (d).

WYO Companies perform significant administrative functions.  In particular, "[a] WYO Company issuing flood insurance coverage shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the [NFIP], based upon the terms and conditions of the [SFIP.]" 44 C.F.R. § 62.23(d).  Although the Government, not the WYO Companies, ultimately pays the claims, "the responsibility for defending claims will be upon the Write Your Own Company and defense costs will be part of the unallocated or allocated claim expense allowance, depending on whether a staff counsel or an outside attorney handles the defense of the matter."  44 C.F.R. § 62.23(i)(6).

## II.     Plaintiffs' Complaint.

Plaintiffs' Complaint contains eight counts.  In Count I, Plaintiffs assert a breach of contract claim against Nationwide for failure to cover property on the first floor of Plaintiffs' home.  In Counts II and III, Plaintiffs assert breach of contract claims against Nationwide and Gallup for failure to cover Plaintiffs' pool and shed.[3]  In Counts IV-VIII, Plaintiffs assert tort claims under Maryland common-law against Nationwide and Gallup for negligence, intentional misrepresentation, negligent misrepresentation, fraud, and deceit in connection with representations made to Plaintiffs during the procurement of the Reeders' insurance policy and statements made in the Declarations Page.[4]  Plaintiffs demand a jury trial on all counts.

---

[3]     Although it does not explicitly reference the NFIP, Plaintiffs' Complaint states that "[a]t the time of the occurrence, Plaintiffs were insured via the Nationwide Flood Program." (Compl. ¶ 29.)  Given the confusion surrounding Nationwide's proper name, *see* BACKGROUND n. 2, *supra*, this Court cannot determine whether Plaintiffs intended to refer to the NFIP in their Complaint.

[4]     Plaintiffs misnumbered Counts IV-VIII in their Complaint.  To avoid confusion, this Opinion refers to those counts as follows: "Count IV" includes ¶¶ 52-59 of Plaintiff's Complaint; "Count V" includes ¶¶ 60-70; "Count VI" includes ¶¶ 71-81; "Count VII" includes ¶¶ 82-85; and "Count VIII" includes ¶¶ 86-89.

### III.   Jurisdiction.

In this case, Nationwide is a WYO Company that issued a Standard Flood Insurance Policy ("SFIP")  to the Reeders.[5]  Article IX of the Reeder's SFIP provides as follows:

> **What Law Governs**: This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001 *et seq*.), and Federal common law.

44 C.F.R. Pt. 61, App. A, Art. IX.  Accordingly, this Court possesses subject matter jurisdiction over Plaintiffs' breach of contract claims pursuant to 28 U.S.C. § 1331.  *See Battle*, 288 F.3d at 606-09 (holding that district courts possess subject matter jurisdiction over breach of contract claims arising out of SFIPs); *see also Studio Frames Ltd. v. Standard Fire Ins.*, 369 F.3d 376, 379-80 (4th Cir. 2004) (declining to decide whether 42 U.S.C. § 4072 provides federal courts with original, exclusive jurisdiction over NFIP claims against WYO Companies).  This Court possesses supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### IV   Motion to Dismiss.

#### A.   Property On First Floor (Count I).

Defendants argue that Plaintiffs' breach of contract claim against Nationwide for failure to cover property on the first floor of their home should be dismissed because the Standard Flood Insurance Policy ("SFIP") specifically excludes such property.  Plaintiffs respond that the Declarations Page—which they received before tropical storm Isabel—extends coverage to "HOUSEHOLD CONTENTS LOCATED ON FIRST FLOOR AND ABOVE" and is therefore inconsistent with the body of the SFIP—which they did not receive until after tropical storm Isabel.

---

[5]      Gallup's role in the NFIP, if any, is unclear from the record.

At first glance, this dispute appears to require that this Court resolve an apparent ambiguity between language in the Declarations Page that provides coverage for household contents on the first floor, and provisions located in the body of the SFIP that exclude the very same property.[6]  *Cf.* 44 C.F.R. Pt. 61, App. A., Art. II(10) ("The Declarations Page is a part of this flood insurance policy."); *Riverside Building Supply, Inc. v. FEMA*, 723 F.2d 1159, 1161 (4th Cir. 1983) (resolving ambiguity created by language in Declarations Form and provision in the body of an SFIP).

This Court cannot conclude that no relief could be granted to Plaintiffs under any set of facts which could be proved consistent with the allegations in Count I.  First, facts may emerge that could resolve this breach of contract claim in Plaintiffs' favor.  *Cf. Riverside*, 723 F.2d at 1161 (noting that while "[a]mbiguities are construed most strongly against the insurer," this principle "loses [] part of its rationale when an insured drafts the ambiguous clause.") (citations omitted).  Second, neither party has adequately explained the principles of law that resolve this particular breach of contract claim.  *Cf. Battle*, 288 F.3d at 607 n.17 (noting "that the exclusive governance of federal common law in resolving interpretative questions concerning insurance policies issued pursuant to the NFIP does not preclude federal courts from drawing upon the body of standard insurance law principles in resolving such questions").[7]

---

[6]     Plaintiffs concede that the body of the SFIP excludes coverage for household property on the first floor of their home.  (*See* Compl. ¶ 74 ("The actual insurance policy states for all intents and purposes that Plaintiffs' personal property located on the first floor of their residence would not be covered.").)

[7]     Defendants attempt to identify "certain elementary construction principles" in their reply to Plaintiffs' opposition.  (*See* Defs' Reply p. 8 (citing 11 Williston on Contracts § 32:3 (4th ed. 1999) for the proposition that "when there is a conflict between general and specific provisions of a contract, the specific clause controls its meaning").)  Putting aside that Plaintiffs have had no opportunity to respond to these arguments, this Court notes that Williston on Contracts also articulates principles of interpretation that favor Plaintiffs.  *See, e.g.,* 16

In addition, this Court is unwilling to treat Defendants' motion to dismiss as one for summary judgment at this early stage in the case.  First, Plaintiffs have not been afforded a reasonable opportunity to present all relevant material with respect to the Declarations Page(s) allegedly received before tropical storm Isabel.  *See, e.g.*, *Jordan v. Washington Mut. Bank*, 211 F.Supp.2d 670, 673 (D. Md. 2002) ("Even if the Court were to conclude that it should at this early stage of the case consider 'matters outside the pleading,' the Court would be required to give the parties a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.') (citing Fed. R. Civ. P. 12(b)).  Second, issues of fact exist with respect to the contents and number of Declaration Page(s) allegedly provided to Plaintiffs.  (*Compare* Pls' Opp'n p. 7 ("[T]he Declarations attached by Defendants are not the same as the Declarations that were provided to Plaintiffs on September 15, 2003, or the successive set of Declarations that were provided to Plaintiffs on or about November 14, 2003.") *with* Defs' Reply p. 2 ("[T]he proffered Declarations Page which Plaintiffs attached to their Opposition demonstrates that it was not even printed until September 24, 2003—a full six days after the storm.") & Ex. 2 (Declarations Page apparently signed by Plaintiffs stating that only contents on "LOWEST FLOOR ABOVE GROUND LEVEL AND HIGHER" would be covered.).)  Accordingly, Defendants' motion to dismiss Count I of Plaintiffs' Complaint is DENIED.  *Migdal,* 248 F.3d at 325; *Conley*, 355 U.S. at 47.

### B.     Pool (Count II).

Defendants contend that Plaintiffs' breach of contract claim against Nationwide and

---

Williston on Contracts § 49:25 (4th ed. 1999) ("The declarations page is the one page of the policy likely to be read by the insured, and contains the terms most likely to have been requested by the insured; it therefore is held to define the coverage afforded the insured and to control over more restrictive terms contained in the body of the policy.") (citation omitted).

Gallup for failure to cover their pool should be dismissed because the SFIP excludes coverage of such property.  In response, Plaintiffs argue that "they were never provided the policy prior to [tropical storm Isabel]" and "they relied exclusively upon the assertions of their insurance agent, Ms. Toohey."  (Pls' Opp'n p. 8.)

This Court finds that Plaintiffs have not stated a breach of contract claim against Defendants for failure to cover their pool.  First, Article IV.14 of Plaintiffs' SFIP specifically provides that pools and their equipment are <u>not</u> covered:

> **Property Not Covered**: . . . Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment, such as, but not limited to, heaters, filters, pumps, and pipes, wherever located.

44 C.F.R. Pt. 61, App. A.  Second, the alleged representations of Ms. Toohey are irrelevant to this federal breach of contract claim as a matter of law because "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law."  *Heckler v. Community Health Servs.*, 467 U.S. 51, 63 (1984); *see also* DISCUSSION § IV(E), *infra* (alleged misrepresentations made during the procurement of an SFIP are relevant to Plaintiffs' state law tort claims).  Finally, this Court notes that Plaintiffs are not seeking a return of the premiums that they allegedly paid "for the sole purpose of insuring the pool against loss."  (Pls' Opp'n p. 8.; Compl. ¶¶ 38-44.)

Even accepting the allegations of Plaintiffs' Complaint as true and construing the facts and reasonable inferences derived therefrom in the light most favorable to Plaintiffs, this Court finds there are no set of facts which could be proved which would entitle the Plaintiffs to relief on Count II.  Accordingly, Defendants' motion to dismiss Count II of Plaintiffs' Complaint is GRANTED.  *Ibarra*, 120 F.3d at 473; *Migdal*, 248 F.3d at 325.

**C.**    **Shed (Count III).**

Defendants argue that Plaintiffs' breach of contract claim against Nationwide and Gallup for failure to cover their shed and personal property inside the shed should be dismissed because the SFIP specifically excludes such property.  In response, Plaintiffs simply dispute that the SFIP excludes these types of property.

At first glance, Plaintiffs do not appear to have stated a breach of contract claim against Defendants for failure to cover their shed.  The preamble to Plaintiffs' SFIP provides that coverage is limited to "[a] non-condominium residential building designed for principal use as a dwelling place of one to four families."  44 C.F.R. Pt. 61, App. A, Preamble.  Given that Plaintiffs do not allege that their shed is a dwelling place for families, it seems reasonable to conclude that the SFIP does not extend coverage to sheds.  *See also* 44 C.F.R. Pt. 61, App. A, Art. III.A (describing coverage under the SFIP for buildings).

This Court, however, cannot conclude that Plaintiffs have failed to state a claim with respect to the shed.  There is nothing in the record before this Court to suggest that Plaintiffs' shed does not, for example, fall within the coverage extended to all "additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof."  44 C.F.R. Pt. 61, App. A, Art. III.A.2.  Although Defendants allege that Plaintiffs' shed is "detached," (*see* Defs' Mtn. p. 10), this Court must disregard those allegations and accept instead the facts and reasonable inferences derived from the allegations made in Plaintiffs' Complaint.  Because those facts do not preclude coverage for the shed as a matter of law, it does not appear certain that Plaintiffs cannot prove any set of facts in support of their claim entitling them to relief.  *Ibarra*, 120 F.3d at 473; *A.S. Abell*, 412 F.2d at 715.

A different analysis applies to Plaintiffs' breach of contract claim against Defendants for

failure to cover personal property that was located inside the shed.  Defendants argue that, even if Plaintiffs' shed is covered, the specific personal property that Plaintiffs claim was lost from their shed is excluded under the SFIP.  (*See* Defs' Reply p. 10-11.)  First, Plaintiffs have had no opportunity to respond to this argument, which was raised for the first time in Defendants' reply brief.  *See Jordan*, 211 F.Supp.2d at 673; Fed. R. Civ. P. 12(b).  Second, factual issues lead this Court to conclude that it would not be appropriate at this early stage in the case to consider the contents of Plaintiffs' "Proof of Loss," the document that catalogued the property in Plaintiffs' shed that was allegedly lost as a result of tropical storm Isabel.  *See* DISCUSSION § V, *supra* (explaining that three Proofs of Loss were allegedly submitted to Defendants and noting that only one of those documents has been presented to this Court).  Accordingly, for the reasons stated above, Defendants' motion to dismiss Count III of Plaintiffs' Complaint is DENIED.

### D.      Extra-Contractual Tort Claims (Counts IV-VIII).

Defendants argue that Plaintiffs' state law tort claims for negligence, intentional misrepresentation, negligent misrepresentation, fraud, and deceit are preempted by federal law as set forth in the SFIP.  (*See* Mot. to Dismiss p. 10. ("Courts throughout the country have dismissed similar extra-contractual claims under the SFIP on the basis of [conflict] preemption.").)  This argument fails because it refuses to recognize the "critical distinction between claims seeking recovery under the SFIP—which are preempted—and those arising from alleged misrepresentations made during the procurement of the policy—which are not."  *Houck v. State Farm Fire and Cas. Co.*, 194 F. Supp. 2d 452, 461 (D.S.C. 2002) (citations omitted).

Each of the state law claims that Defendants contend conflict with federal law involve alleged misrepresentations made to Plaintiffs during the procurement of their SFIP.  In Count IV, for example, Plaintiffs assert a negligence claim against Gallup for "assur[ing] Plaintiffs that

their pool would be covered in the event of a flood." (Compl. ¶ 56.) Similarly, Counts V-VI assert claims of intentional and negligent misrepresentation, fraud, and deceit against Nationwide for "promises made by [Gallup] and the Declaration provided by Nationwide. . . ." (*Id*. at ¶ 65.) Likewise, Counts VII-VIII assert that Gallup and Nationwide are "vicariously liable for the torts of [their] employees." (*Id*. at ¶ 83.) These claims do not appear to arise out of the terms of Plaintiffs' SFIP or any claim handling on Nationwide's part.

Defendants' primary argument for preemption is that "[c]ourts throughout the country have dismissed similar extra-contractual claims under the SFIP on the basis of preemption." (Defs' Mtn. p. 10.) Most of the decisions cited by Defendants, however, simply do not resolve the issue presented by the case at bar, *i.e.*, whether state law tort claims arising out of misrepresentations made in the procurement of a flood insurance policy are preempted by federal law. For example, the United States Courts of Appeals have yet to resolve whether procurement-based claims are preempted by federal flood insurance law. *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005) (holding that "state law tort claims arising from claims handling by a WYO are preempted by federal law" but not addressing whether procurement-based claims are preempted);[8] *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 271 n.12 (3rd Cir. 2004)

_____

[8]        The United States Court of Appeals for the Fifth Circuit emphasized in *Wright* that its prior decision in *Spence v. Omaha Indemnity Ins.*, 996 F.2d 793 (5th Cir. 1993) does not stand for the proposition that *all* state law tort claims, whether based on policy procurement or claims adjustment, are preempted by federal law:

> The issue in *Spence* was a narrow one: whether federal or state law determined the statute of limitations for bringing state law claims against a WYO. While we held that state law would govern the statute of limitations for state law tort claims, we did not foreclose the possibility of field or conflict preemption. Rather, our holding was premised on the fact that "the NFIA contains no express preemption provision" and "neither [the insurer] nor the federal government as amicus suggests preemption of the state law fraud

(distinguishing cases "ar[ising] from misrepresentation in the *procurement* of a Policy.  Our case, by contrast, involves misrepresentation in the *adjustment* of a claim under a Policy.") (emphasis in original); *Gibson v. American Bankers Ins. Co.*, 289 F.3d 943, 949-50 (6th Cir. 2002) ("It is unnecessary for us to decide whether policy procurement type state law claims are preempted by NFIA.").

The Fourth Circuit, moreover, recently declined to address preemption of state law claims in the national flood insurance context.  *See Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 609 n.20 (4th Cir. 2002) ("Given our disposition of the Remaining Claims, resolution of the various preemption issues raised by SCIC in this appeal would be premature.").  In addition, United States District Courts within the Fourth Circuit appear to be divided with respect to whether state law tort claims are preempted by national flood insurance law.  *Compare Bleecker v. Standard Fire Ins. Co.*, 130 F.Supp.2d 726, 735 (E.D.N.C. 2000) (Finding that "NFIA does not preempt plaintiff's state law tort claims" under "North Carolina's Unfair Trade Practices Act, N.C.Gen.Stat. § 58-63-15.") *with Peal v. N.C. Farm Bureau Mut. Ins. Co.*, 212 F.Supp.2d 508, 517 (E.D.N.C. 2002) (Concluding that "subjecting WYO companies to North Carolina's bad faith statutes—§§ 75-1.1 and 58-63-15(11)—would frustrate NFIA's objectives" and "respectfully reject[ing] the *Bleecker* court's reasoning for declining to find a conflict between the NFIA and § 58-63-15(11) . . . .");[9] *see also Houck v. State Farm Fire & Cas. Co.*, 194

---

claim."  Thus, the issue of whether the NFIA preempted state law tort claims was not before the court in *Spence*, and the court did not address it.

*Id*. at 389-90.

[9]    *Bleecker* and *Peal* may not be as inconsistent as they initially appear.  First, both decisions agree that no basis exists for finding express or field preemption of state law tort claims in the flood insurance context.  *See Bleecker*, 130 F.Supp.2d at 732-33; *Peal*, 212

F.Supp.2d 452, 461-69 (D.S.C. 2002) (finding that conduct in the policy procurement context constituting fraud and civil conspiracy raises matters that predominantly deal with state law); *Waltrip v. Brooks Agency, Inc.*, No. 2:05CV627, 2006 WL 268880, *3-4 (E.D.Va. Feb. 1, 2006) ("[F]ollowing the persuasive reasoning provided in *Houck*, the court determines that the legal issues in dispute implicate primarily state law because plaintiffs' allegations do not involve a claim under an SFIP, the interpretation of an SFIP, or a dispute related to the NFIP rules and regulations, but rather primarily focus on the procurement of an insurance policy and the alleged wrongful conduct of the agent.").

Finally, although at least two United States District Courts outside the Fourth Circuit have suggested or held that procurement-based claims are preempted, *see Scritchfield v. Mutual of Omaha Ins. Co.*, 341 F.Supp.2d 675, 680 (E.D.Tex. 2004); *Mason v. Witt*, 74 F.Supp.2d 955, 963 (E.D.Cal. 1999), most have determined or indicated that procurement-based claims are not preempted by the NFIA. *See McCormick v. Auto Owners Ins. Co., Inc.*, No. 04-54-JBC, 2005 WL 1364567, *2 (E.D.Ky. Jun. 6, 2005) (unpublished); *Corliss v. South Carolina Ins. Co.*, No. 03-2944, 2004 WL 2988497 (E.D.La. Dec. 14, 2004) (unpublished); *DeLoach v. Hood*, No. 03-0086, 2003 WL 21077411, *2 (W.D.Tex. Apr. 22, 2003) (unpublished); *Moore v. USAA General*

F.Supp.2d at 514-515.  Second, although it is difficult to determine the precise nature of the underlying state law tort claims at issue in *Bleecker* and *Peal*, those claims appear to be significantly different in type.  *Bleecker* appears focused on a claim based on conduct that is outside the scope of the arrangement between FEMA and the WYO insurer, while *Peal* appears to address a claim based on conduct that is inside the scope of that arrangement.  *See Bleecker*, 130 F.Supp.2d at 729 & 732 (suggesting that plaintiff's state law tort claim arose from defendant's alleged failure to communicate and work with plaintiff); *Peal*, 212 F.Supp.2d at 511 ("The heart of [plaintiff's state law tort claim] seems to be the allegation that the alleged erroneous depreciation deduction constituted an unfair claim settlement practice.").  This difference could explain the apparently inconsistent holdings reached in these decisions because claims based on conduct outside the scope of the arrangement between FEMA and WYO Companies would not conflict with federal flood insurance law.

*Indem. Co.*, No. 02-2021, 2002 WL 31886719, *2-3 (E.D.La. Dec.19, 2002) (unpublished);

*Jamal v. Travelers Lloyds of Texas Ins. Co.*, 129 F.Supp.2d 1024, 1029-30 (S.D.Tex. 2001)

(unpublished); *Powers v. Autin-Gettys-Cohen Ins. Agency, Inc.*, No. 00-1821, 2000 WL

1593401, at *3-4 (E.D.La. Oct.24, 2000) (unpublished); *Messa v. Omaha Prop. & Cas. Ins. Co.*,

122 F.Supp.2d 513, 522 (D.N.J. 2000) (unpublished); *Lakewood Apartments Ass., L.P. v.*

*Proctor Homer Warren, Inc.*, No. 95-4385, 1996 WL 227837, *2-3 (E.D.La. May, 3, 1996)

(unpublished).

　　　　State law is preempted under the Supremacy Clause of the United States Constitution

where: (1) Congress explicitly defines the extent to which its enactments preempt state law, *i.e.*,

express preemption; (2) state law regulates conduct in a field that Congress intended the federal

government to occupy exclusively, *i.e.*, field preemption; or (3) state law actually conflicts with

federal law, *i.e.*, conflict preemption.[10]  Conflict preemption exists "where it is impossible for a

private party to comply with both state and federal requirements . . . or where state law stands as

an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." *Id.* (citations and internal quotation marks omitted).  Preemption is primarily a

question of congressional intent. *Medtronic Inc. v. Lohr*, 518 U.S. 470, 483-84 (1996).  Finally,

where an area is traditionally regulated under state police power, there is a presumption against

preemption. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992).

　　　　Having reviewed the cases, statutes, and regulations cited by the parties, this Court finds

that state law tort claims arising out of alleged misrepresentations made during the procurement

of an SFIP are not preempted in the flood insurance context.  First, Defendants do not argue that

---

[10]　　　The Supremacy Clause is set forth in Article VI, Clause 2 of the United States
Constitution

Congress intended to expressly preempt or exclusively occupy this particular area of state law. Indeed, statutes issued under the NFIA and regulations promulgated by FEMA appear to contemplate negligence actions against WYO Companies.  *See*, *e.g.*, 42 U.S.C. § 4081(c) ("The Director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission.").  FEMA regulations, moreover, explicitly contemplate state administrative agencies exercising auditing and regulatory control over WYO Companies.  *See* 44 C.F.R. Pt. 62, App. B(b) ("The WYO Companies are subject to audit, examination, and regulatory controls of the various States.") & (c) ("[T]his process is consistent with customary reinsurance practices and avoids duplication of examinations performed under the auspices of individual State Insurance Departments, NAIC Zone examinations, and independent CPA firms.").

This Court finds these particular regulations significant in light of the presumption against preemption in areas such as insurance, which are traditionally regulated under state police powers.  *Cf. Gottlieb v. Lincoln Nat'l Life Ins. Co.*, 388 F.Supp.2d 574, 582 (D. Md. 2005) (noting the State of Maryland's substantial interest in regulating Maryland insurance companies, agents, and brokers) (citations omitted)); *Bleecker*, 130 F.Supp.2d at 734 ("As insurance law is an area traditionally regulated by the states, the defendant bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law.") (citations and internal quotation marks omitted).  Taken as a whole, the Court finds that the statutory and regulatory framework associated with the NFIA does not suggest express or field preemption.[11]

---

[11]    This Court notes that other courts have argued that the legislative history of the NFIA suggests that Congress did not intend to preempt all state law torts arising out of flood insurance policies.  *See Van Holt v. Liberty Mut. Fire Ins. Co.*, 143 F.3d 783, 788 (3rd Cir. 1998)

Furthermore, there is no conflict preemption as there is no actual conflict between state law tort claims arising out of alleged misrepresentations made during the procurement of an SFIP and federal flood insurance law.  For example, the regulations in effect when Plaintiffs purchased their SFIP from Defendants remove negligence-type claims from the "Arrangement" between FEMA and WYO Companies:

> The parties [to the Arrangement] shall not be liable to each other for damages caused by inadvertent delay, error, or omission made in connection with any transaction under this Arrangement. In the event of such actions, the responsible party must attempt to rectify that error as soon as possible after discovery of the error and act to mitigate any costs incurred due to that error.

44 C.F.R. Pt. 62, App. A, Art. IX (amended 2004).[12]  FEMA, moreover, does not reimburse

_____

("Indeed, the legislative history of § 4053 specifically states that, even though claimants may sue for coverage in federal court, they maintain the right to pursue other 'legal remedies in State courts.'") (quoting H.R.Rep. No. 1585, reprinted in 1968 U.S.C.C.A.N. 2873, 3022), *vacated on other grounds by Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161 (3rd Cir. 1998); *Bleecker*, 130 F.Supp.2d at 734-45 (discussing same legislative history); *Possessky v. Nat'l Flood Ins. Ass'n*, 507 F.Supp. 913, 915 (D.N.J.1981) (same).  A close reading of 1968 U.S.C.C.A.N. at 3022, however, reveals that the statement focused on in these decisions—"(Claimants could, of course, also avail themselves of legal remedies in State court.)"—occurs in the context of Part A of the NFIA (industry program with federal financial assistance), but not in the context of Part B of the NFIA (government program with industry assistance).  *See* 1968 U.S.C.C.A.N. at 3022. There is no question that the WYO Program is administered under Part B of the NFIA.  As a result, this legislative history is of questionable relevance to the preemption analysis at issue in this case.

[12]    The current version of Article IX, which became effective October 1, 2004, explicitly contemplates claims arising out of negligence by the WYO Company:

> In the event of negligence by the Company that has not resulted in litigation but has resulted in a claim against the Company, FEMA will not consider reimbursement of the Company for costs incurred due to that negligence unless the Company takes all reasonable actions to rectify the negligence and to mitigate any such costs as soon as possible after discovery of the negligence.  Further, (i) if the claim against the Company is grounded in actions significantly outside the scope of this Arrangement or (ii) if there is negligence by the agent, FEMA will not reimburse any costs incurred due to that

WYO Companies for judgments arising out errors or omissions made by WYO Companies:

> In the event that steps are not taken to rectify the situation and such action leads to claims against the company, the NFIP, or other related entities, the responsible party shall bear all liability attached to that delay, error or omission to the extent permissible by law.

*Id.*;[13] *see also* 42 U.S.C. § 4081(c) (the Director of FEMA "may not hold harmless or indemnify an agent or broker for his or her error or omission.").   As a result, United States Treasury funds are not at stake for judgments against WYO Companies arising out of tort claims based on misrepresentations made during the procurement of SFIPs.  *See*, *e.g.*, *Spence v. Omaha Indemnity Ins.*, 996 F.2d 793, 796 n.17 (5th Cir. 1993); *Powers*, 2000 WL 1593401 at *3 ("Although WYO insurers may draw on FEMA letters of credit to pay SFIP claims the WYO-FEMA agreement and the appropriate regulations do not permit reimbursement for a judgment based on a state law tort claim.").

Finally, this court notes that WYO Companies are afforded significant independence

---

> negligence. The Company will be notified in writing within thirty (30) days of a decision not to reimburse.  In the event the Company wishes to petition for reconsideration of the decision not to reimburse, the procedure in Article III, Section D.3.d shall apply.

44 C.F.R. Pt. 62, App. A, Art. IX (effective October 1, 2004).

[13]     FEMA regulations promulgated after Plaintiffs' claims arose explicitly provide that WYO Companies will not be reimbursed for issues of agent negligence that are outside the scope of the Arrangement.  *See* 44 C.F.R. Pt. 62, App. A, Art. III (effective October 1, 2004) ("If the FEMA [Office of General Counsel] finds that the litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence, then the FEMA OGC shall make a recommendation to the Administrator regarding whether all or part of the litigation is significantly outside the scope of the Arrangement . . . any award or judgment for damages and any costs to defend such litigation will not be recognized under Article III as a reimbursable loss cost, expense or expense reimbursement.").  These regulations make explicit what appears to have been standard FEMA practice with respect to reimbursement of litigation costs.  *See* 69 Fed. Reg. 45,607 at 45,608 (July 30, 2004) (noting that "FEMA will *continue* to rely on the 'significantly outside the scope of the Arrangement' standard for [litigation] reimbursement decisions") (emphasis added).

when marketing flood insurance policies.  For example, regulations in effect when Plaintiffs

purchased their SFIP allowed WYO Companies to "market flood insurance policies in any

manner consistent with its customary method of operation, provided that there is adherence to

Program statutes, regulations and explicit guidelines."  44 C.F.R. Pt. 62, App. A, Art. II, sec. G

(amended 2004);[14] *see also Spence*, 996 F.2d at 796 (citing 44 C.F.R. § 62.23(e) which provides

that "a WYO Company shall use its own customary standards, staff and independent contractor

resources, as it would in the ordinary and necessary conduct of its own business affairs, subject

to the Act and regulations prescribed by the Administrator under the Act."); *Houck*, 194

F.Supp.2d at 464 n.22 (same).

For the reasons stated above, this Court finds that Plaintiffs' state law tort claims for

negligence, intentional misrepresentation, negligent misrepresentation, fraud, and deceit are not

preempted by federal flood insurance law.[15]  To find otherwise "would leave an entire area of the

---

[14]    The current version of Article II, section G is substantively identical and provides
that "[t]he Company shall market flood insurance policies in a manner consistent with marketing
guidelines established by FIA."  44 C.F.R. Pt. 62, App. A, Art. II, sec. G (effective October 1,
2004).

[15]    This Court notes that a different analysis might apply to state law tort claims
arising out of misrepresentations made during the claims handling process.  *See* 44 C.F.R. Pt. 61,
App. A, Art. IX ("This policy and *all disputes arising from the handling of any claim* under the
policy are governed exclusively by flood insurance regulations issued by FEMA, the National
Flood Insurance Act of 1968, . . . and Federal common law.") (emphasis added); 65 Fed. Reg.
34,824 at 34,827 (May 31, 2000) (explaining that Article IX clarifies "that matters pertaining to
the Standard Flood Insurance Policy, *including issues relating to and arising out of claims
handling*, must be heard in Federal Court and are governed exclusively by Federal Law.")
(emphasis added); *see also Richmond Printing, LLC v. Director, FEMA*, 72 Fed. Appx. 92, 2003
WL 21697457, *2 (5th Cir. 2003) (unpublished) (noting Article IX to "emphasize that our
preemption decision in this case applies only to those claims which arose prior to the date the
amended SFIP became effective"); *Corliss*, 2004 WL 2988497 at *3 ("Here, plaintiffs' claim is
for negligence in policy procurement, not claims handling. Thus, the revised regulation does not
apply to this claim, nor does it affect the holding in Spence, which applied to state law claims
relating to policy procurement.").

insurance field unregulated and immunize private insurers no matter how egregious their conduct." *Bleecker*, 130 F.Supp.2d at 736-37.

### E.    Reliance on Agent's Misrepresentations.

Defendants argue that Plaintiffs' state law tort claims must be dismissed because Plaintiffs are charged with constructive notice of the terms and conditions of their SFIP.  As a result, Defendants contend that "[n]o one, not Nationwide, Gallup, or their employees, could have made any misstatements regarding coverage to the Plaintiffs that would have justified the Plaintiffs' reliance thereon.  If any such statements were made, they were 'void' under federal law."  (Defs' Mtn. p. 13 (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)).

This very argument, however, was rejected by the United States Court of Appeals for the Fifth Circuit in *Spence v. Omaha Indemnity Ins.*, 996 F.2d 793 (5th Cir. 1993).   Noting that "the Supreme Court formulated the *Merrill* rule in the context of an action asserting estoppel against the government," the Fifth Circuit held that "assuming *arguendo* that Omaha may avail itself of the rule in *Merrill* and that publication in the Code of Federal Regulations gave the Spences constructive notice of policy terms, such notice would not excuse Omaha from liability for its agents' misrepresentations."  *Id*. at 797.[16]

---

[16]    Defendants make no attempt to distinguish this aspect of *Spence*, citing instead to *Larmann v. State Farm Ins. Co.*, No. 03-2993, 2005 WL 3571191 (E.D.La. Feb. 11, 2005) (unpublished) and *Deverant v. Selective Ins. Co. Inc.*, No. 02-3801, 2004 WL 1171333 (E.D.Pa. Mar. 25, 2004) (unpublished), both of which dismiss state law tort claims arising out of misrepresentations on the basis of constructive knowledge in the context of flood insurance. *Larmann* suggests that the Fifth Circuit recently abandoned its earlier approach in *Spence* with respect to constructive knowledge of federal statutes.  *See Larmann*, 2005 WL 3571191 at *4-5. A close reading of the unpublished decision that *Larmann* relies on, however, indicates otherwise.  In *Richmond Printing, L.L.C. v. Director, FEMA*, 72 Fed. Appx. 92, 2003 WL 21697457 (5th Cir. 2003) (unpublished), the Fifth Circuit affirmed the district court's entry of summary judgment because "the special nature of the insurance relationship in this case charges the insured with the duty of understanding the terms of the SFIP so that he may deal appropriately with the government and its appointed agents."  *Id*. at *5.  The factual context of

Defendants also contend that FEMA "legislatively preempted" any potential claims of

misrepresentation by promulgating the following regulation:

> The standard flood insurance policy is authorized only under terms
> and conditions established by Federal statute, the program's
> regulations, the Administrator's interpretations and the express terms
> of the policy itself. Accordingly, *representations regarding the extent*
> *and scope of coverage which are not consistent with the National*
> *Flood Insurance Act of 1968, as amended, or the Program's*
> *regulations, are void*, and the duly licensed property or casualty agent
> acts for the insured and does not act as agent for the Federal
> Government, the Federal Emergency Management Agency, or the
> servicing agent.

44 C.F.R. § 61.5(e) (emphasis added).  This argument has also been considered and rejected by

at least two courts.  *See Houck*, 194 F.Supp.2d at 462 ("However, this regulations does not have

the effect of immunizing agents from liability for fraudulent statements concerning the scope of

coverage, but instead it protects federal funds by making clear that such unauthorized actions

cannot operate to waive a provision of the SFIP.") (citing *Kennedy v. CNA Ins. Co.*, 969 F.Supp.

931, 935 n.6 (D.N.J. 1997)); *see also Spence*, 996 F.2d at 797 ("FEMA regulations disclaiming

any agency relationship with WYO companies, as well as the terms of the FEMA-WYO

agreement, more indicate intent to leave these insurers responsible for their own tortious conduct

. . . We decline to accept a reading of that provision immunizing WYO companies from liability

for the tortious conduct of their agents.").  Accordingly, Defendants' motion to dismiss

---

*Richmond Printing*, however, involved an action against claims adjusters who allegedly
misrepresented to plaintiffs the process by which they needed to submit a claim under the SFIP.
*Id.* at *3.  That process is within the scope of the arrangement between the WYO Companies and
FEMA.  *Id.* at *5 ("The SFIP clearly states that the adjusters are provided only as a courtesy and
that the ultimate responsibility for correctly completing and submitting the proof of loss forms
falls entirely on the insured.").  In contrast, the claims at issue in *Spence* and this case are
outside the scope of the arrangement between the WYO Companies and FEMA.  *See* Discussion §
IV.D, *supra*.  For this reason, *Richmond Printing* does not imply that the approach taken in
*Spence* toward the issue of constructive notice is no longer good law.

Plaintiffs' Complaint based on constructive knowledge of federal statues and 44 C.F.R. § 61.5(e)

is DENIED.

## V.     Proof of Loss.

Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiffs failed

to submit a timely and proper proof of loss in accordance with the terms of the SFIP.  In

response, Plaintiffs maintain that "[t]ime and again, Plaintiffs informed defendant Nationwide

that they had filed the required Proof of Loss in conversations and in writing."  (Pls' Opp'n p. 6.)

A proof of loss ("POL") is a document that states the amount of the claim and provides

specific details concerning the loss.  Article VII.J.4 of Plaintiffs' SFIP required that:

> **Requirements In Case of Loss**: . . . Within 60 days after the loss,
> send us a proof of loss, which is your statement of the amount you are
> claiming under the policy signed and sworn to by you, and which
> furnishes us with the following information:
>
> a.      The date and time of loss;
> b.      A brief explanation of how the loss happened;
> c.      Your interest (for example, "owner") and the interest, if
>         any, of others in the damaged property;
> d.      Details of any other insurance that may cover the loss;
> e.      Changes in title or occupancy of the covered property
>         during the term of the policy;
> f.      Specifications of damaged buildings and detailed repair
>         estimates;
> g.      Names of mortgagees or anyone else having a lien, charge,
>         or claim against the insured property;
> h.      Details about who occupied any insured building at the
>         time of loss and for what purpose; and
> i.      The inventory of damaged personal property described []
>         above.

44 C.F.R. Pt. 61, App. A.  It is well-established that insureds must strictly comply with the POL

requirements under an SFIP.  *See*, *e.g.*, *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, 390-

92 (9th Cir. 2000) ("The 60 day sworn proof of loss requirement is a condition precedent to

payment for which all claimants are strictly accountable.").

The precise issue in this case is whether the copy of the POL that Plaintiffs attached to their opposition papers complies with the requirements set forth above. Although Plaintiffs' POL does not appear to comply with the requirement that it be "sworn," this Court is unwilling to treat Defendants' motion to dismiss as one for summary judgment at this early stage in the case. First, Plaintiffs have not been afforded a reasonable opportunity to present all relevant material to the Court with respect to their POL. *Jordan*, 211 F.Supp.2d at 673; Fed. R. Civ. P. 12(b). Second, Plaintiffs' opposition papers indicate that three POLs were apparently submitted to Defendants. (*See* Pls' Opp'n pp. 6-7 ("Plaintiffs initially provided the executed Proof of Loss soon after the disaster . . . [t]he executed 'Proof of Loss' form, with attachments, was resubmitted on a second occasion on or about November 1, 2003 . . . [and o]n or about March 15, 2004, Plaintiffs faxed to Nationwide representative Pat McKnight yet another copy of the Proof of Loss . . .").) This Court has no information regarding these other POLs and therefore lacks a sufficient basis from which to conclude that there are no facts which could be proved by the Plaintiffs to establish compliance with the POL requirements under the SFIP. Accordingly, Defendants' motion to dismiss Plaintiffs' Complaint based on alleged inadequacies associated with Plaintiffs' POL is DENIED.

**VI.      Motion to Quash Jury Demand.**

Defendants also filed motions to quash the jury demand set forth in Plaintiffs' Complaint. It is well-established that Congress has not provided for the right to a jury trial in actions against FEMA or a WYO Company with respect to claims for coverage under a SFIP or disputes regarding terms of the SFIP. *See*, *e.g.*, 42 U.S.C. § 4072; *Bleecker*, 130 F.Supp.2d at 737; *Kolner v. Director, FEMA*, 547 F.Supp. 828, 830 (N.D.Ill. 1982); *Latz v. Gallagher*, 550 F. Supp. 257 (D.C.Mich. 1982). Accordingly, Defendants' Motions to Quash Jury Demand are

GRANTED with respect to Plaintiffs' remaining breach of contract claims (Counts I & III).

The analysis differs with respect to Plaintiffs' state law tort claims against Defendants for negligence, intentional misrepresentation, negligent misrepresentation, fraud, and deceit.  Where federal funds are not at stake in connection with such claims, courts have found that plaintiffs are entitled to a jury trial.  *See Bleecker*, 130 F. Supp. 2d at 737; *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 2004 WL 2435002, *3-4 (E.D. La. 2004); *see also Spence*, 996 F.2d at 794 ("[T]he case was submitted to the jury on both fraud and contract theories of liability.").  This Court has already determined that Plaintiffs' state law claims will not result in charges against the United States Treasury.  *See* Discussion § IV.D, *supra*.  Accordingly, Defendants' Motions to Quash Jury Demand are DENIED with respect to Plaintiffs' state law tort claims (Counts IV-VIII).

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motions to Dismiss Plaintiffs' Complaint are GRANTED-IN-PART and DENIED-IN-PART and Defendants' Motions to Quash Plaintiffs'

Demand for a Jury Trial are GRANTED-IN-PART and DENIED-IN-PART.  A separate Order

follows.


Dated: March 13, 2006                    /s/_____

                                         Richard D. Bennett
                                         United States District Judge